## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

BETTY KINCAID                                                                    PLAINTIFF

VS.                                                   CIVIL ACTION NO. 3:05-cv-550 HTW-LRA

MINACT-YATES, LLC, ET AL.                                                  DEFENDANTS

## <u>MEMORANDUM OPINION AND ORDER</u>

Before this court is the motion of the defendant MINACT-Yates, LLC, a Logistic

Center in Canton, Mississippi, asking this court to dismiss this action under Rule

12(b)(6)[1] of the Federal Rules of Civil Procedure or, alternatively, for summary

judgment under Rules 56(b)[2] and (c),[3] Federal Rules of Civil Procedure [**Docket No.**

**7**].   Plaintiff here is Betty Kincaid, now *pro se*, who earlier when she had counsel filed

this complaint pursuant to Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, 42

U.S.C. § 2000e, *et seq.*, asserting claims of sexual harassment, hostile work

---

[1]Rule 12(b)(6) provides that, "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted."

[2]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim ... is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[3]Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ..."

environment, and retaliation.[4]  Additionally, asserting supplemental jurisdiction under Title 28 U.S.C. § 1367(a),[5] she alleges a state law claim of intentional infliction of emotional distress.

Plaintiff's complaint names as defendants Bill Sloan, Robert McNemar and MINACT-Yates, LLC.  Pursuant to a stipulation between the parties, the individual defendants Bill Sloan and Robert McNemar have been dismissed from this lawsuit with prejudice.  The motion now before the court to dismiss or, alternatively, for summary judgment is being urged by the remaining defendant MINACT-Yates, LLC.

This court's jurisdictional grant is federal question jurisdiction as codified at Title 28 U.S.C. § 1331,[6] and for civil rights jurisdiction at Title 28 U.S.C. § 1343.[7]  This court's jurisdiction over this dispute also is provided by § 706(f)(3) of Title VII which

---

[4]The plaintiff filed her complaint with the Equal Employment Opportunity Commission ("EEOC") on December 3, 2004.  This lawsuit was filed on September 9, 2005, after the plaintiff received a Right-to-Sue letter from the EEOC on June 9, 2005.

[5]Title 28 U.S.C. § 1367(a) provides that, "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

[6]Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

[7]Title 28 U.S.C. § 1343(a)(3) provides that, "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

2

establishes federal court jurisdiction over "actions brought under" Title VII.  *See* Title 42 U.S.C. § 2000e-5(f)(3).[8]

As earlier stated, plaintiff is *pro se*, having been separated from counsel back on October 1, 2007.  Since then, she says she has sought to hire new counsel but has been unsuccessful.

### *PRO SE* PLAINTIFF

Originally, plaintiff was represented by counsel.  When counsel failed to appear for a scheduled hearing, the United States Magistrate Judge conducted a telephone conference with the plaintiff and her attorney on May 11, 2007, and concluded that the attorney should file a motion to withdraw from representing the plaintiff.  On May 17, 2007, the Magistrate Judge again conducted a telephonic conference with the plaintiff and her attorney.  The plaintiff informed the Magistrate Judge that she had contacted another attorney who had agreed to represent her in this matter.  The Magistrate Judge then held the motion of her initial attorney to withdraw in abeyance until new counsel made an appearance in the case.

---

[8]Title  42 U.S.C. § 2000e-5(f)(3) provides that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

On May 29, 2007, the plaintiff delivered a letter to the court explaining that her "new" attorney had decided not to represent the plaintiff in this case.  On August 22, 2007, the plaintiff submitted a petition requesting permission to be her own attorney in this matter.  Plaintiff's initial attorney in this case was permitted to withdraw on October 1, 2007.

Now, the plaintiff is proceeding *pro se*.  A *pro se* litigant assumes a responsibility to learn and follow the applicable rules of procedure and in the event of noncompliance,  must make a showing of good faith and establish some reasonable basis therefor.  *See Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985); and *Systems Signs Supplies v. United States Dept. of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).  *Pro se* status alone is insufficient to establish good cause for noncompliance.  *Id.* at 1013-14. The court may, however, consider it as a mitigating factor in favor of leniency.  *Id.* at 1014.

## PERTINENT FACTS

Plaintiff, an African-American female, was employed by the defendant MINACT-Yates on January 11, 2004.  Her employment ended on September 3, 2004, after her medical leave of absence expired.  During the intervening time, says plaintiff, from the time she started her employment, until July 26, 2004, when she took a medical leave from her position at MINACT-Yates, she says she repeatedly was subjected to harassing sexual behavior of two supervisors, namely, the defendants Robert McNemar and Bill Sloan, now dismissed from this cause.  Often, says plaintiff, she was asked to report to McNemar's office where, in the presence of Sloan, she

4

would be asked to view pornographic pictures on a computer screen and to offer her comments.  The plaintiff says that she did not encourage this activity and made clear that she did not want to participate.

On other occasions, says plaintiff, the defendant Bill Sloan, who is Caucasian, would ask her questions about her sexual preferences and the sexual practices of African-American men.  Additionally, says plaintiff, Sloan would call the plaintiff at home to ask if the plaintiff would submit to having sex with him.

According to plaintiff, her mental health deteriorated from having to deal with Sloan's and McNemar's continued sexual harassment.  Finally, says plaintiff, because she constantly was subjected to a hostile work environment, she took medical leave on July 26, 2004, and was terminated[9] on September 3, 2004, after expiration of her medical leave when she had failed to report to work.

On December 3, 2004, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation.  The plaintiff says she received a Notice of Right to Sue, dated June 9, 2005, from the EEOC, but the right-to sue letter does not appear to have been included in the record.  The plaintiff filed this lawsuit on September 9, 2005.

The plaintiff charges that MINACT-Yates LLC knowingly acquiesced to the discrimination perpetrated against her, that the defendant failed to investigate these matters after being informed of the circumstances and refused to take any remedial

---

[9]In her papers, plaintiff states in passing that she was terminated "while on medical leave," however, the facts show that she was terminated after she failed to report to work after her medical leave had expired.  Indeed, in her complaint, plaintiff states that she "quit" her employment.

action.  The plaintiff seeks compensation for lost wages and benefits and for medical expenses incurred from being treated for both the physical and mental conditions allegedly caused by the conduct of defendant's employees, McNemar and Sloan.  The plaintiff also asserts a claim for intentional infliction of emotional distress based upon the same alleged circumstances.  Finally, as a predicate for punitive damages, the plaintiff charges that MINACT-Yates maliciously and recklessly disregarded the circumstances the plaintiff encountered while employed there.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Id.* at 261. This court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a

6

genuine issue for trial" in accordance with Rule 56(e)(2)[10] of the Federal Rules of Civil

Procedure.   Assuming no genuine issue exists as to the material facts, the Court will

then decide whether the moving party shall prevail solely as a matter of law.  *Id.* The

moving party is entitled to judgment as a matter of law if "the nonmoving party has

failed to make a sufficient showing on an essential element of the nonmoving party's

case with respect to which the nonmoving party has the burden of proof." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## THE MOTION OF MINACT-YATES, LLC, TO DISMISS OR
## FOR SUMMARY JUDGMENT

### A.  Insufficient Service of Process

MINACT-Yates first asserts that plaintiff failed to effectuate service of process

upon defendants McNemar and Sloan.  Inasmuch as the plaintiff's claims against

these defendants have been dismissed, these issues now are moot.

### B.  Failure to File EEOC Charge Within 180 Days

Next, MINACT-Yates argues that the plaintiff failed to file her charge with the

EEOC within the appropriate time period so as not to be barred by the statute of

limitations from pursuing this lawsuit.  The EEOC filing requirement for Title VII cases

is contained in Title 42 U.S.C. § 2000e-5(e)(1)[11] and was intended by Congress to act

---

[10]Rule 56(e)(2) provides that, "[w]hen a motion for summary judgment is properly
made and supported, an opposing party may not rely merely on allegations or denials in its
own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set
out specific facts showing a genuine issue for trial. If the opposing party does not so respond,
summary judgment should, if appropriate, be entered against that party."

[11]Title 42 U.S.C. § 2000e-5(e)(1) provides that, "[a] charge under this section shall be
filed *within one hundred and eighty days after the alleged unlawful employment practice*

as a statute of limitations.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).  The statute dictates that the limitations period is 180 days after the occurrence of the alleged unlawful employment practice.

According to plaintiff, defendant MINACT-Yates acquiesced in the creation of a hostile or abusive work environment by the conduct perpetrated by Sloan and McNemar.  Since plaintiff contends that such conduct is actionable under Title VII, this court agrees with defendant that plaintiff was required to file her charges with the EEOC within 180 days after the occurrence of the alleged illegal conduct.  *Hood v. Sears Roebuck & Company*, 168 F.3d 231, 232 (5th Cir. 1999), citing 42 U.S.C. § 2000e-5(e)(1) and *Zipes v. Trans World Airlines*, 455 U.S. 385, 393-94, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

At this point, we need to examine the plaintiff's complaint because several of her allegations therein are important in the court's resolution of the instant motion.  In Paragraph VII of her complaint, plaintiff asserts that:

> Plaintiff began working for MINACT-Yates as an inventory analyst on or about January 4, 2004.  Shortly thereafter, Defendant Sloan and Defendant McNemar began sexually harassing Plaintiff and **continued to do so until Defendant**

---

*occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter*, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

> **Sloan was transferred later that same year.**  (Emphasis added).

In Paragraph VIII of her complaint, plaintiff recites the following:

> Each and every time Plaintiff was asked to look at a pornographic picture or comment on the same, she would respond in a manner clearly indicating her lack of desire to participate in such viewing or discussion.  Plaintiff's wishes, however, were consistently ignored by Defendants and Defendants continued to subject Plaintiff to the behavior described above **until she resigned her position**. (Emphasis added).

Then, in Paragraph IX of her complaint, plaintiff alleges the following:

> Finally, in late 2004, Defendant Sloan was transferred to Smyrna, Tennessee; **he managed to request sex, however, one last time from Plaintiff before leaving.** (Emphasis added).  Plaintiff denied Defendant Sloan's request, again.

In Paragraph XV, plaintiff alleges:

> Although Plaintiff did not encourage, welcome, or consent to the harassment described in Plaintiff's statement of the facts in the above paragraphs in Count One, she endured the same due to her knowledge of the fact that Defendant Sloan was to be transferred and her fear of loss of employment.

In Paragraph XX, plaintiff alleges that:

> The Plaintiff was forced to resign from her position, because she refused to participate in the sexual activity demanded by Defendants ... .

In this case, the plaintiff did not file her EEOC charge within 180 days as required.  The facts recited by the parties and by the plaintiff in her complaint establish that the defendant McNemar and Sloan would be present when the plaintiff was

summoned to McNemar's office to view pornographic photos on McNemar's computer; that Sloan engaged in many acts of offensive behavior until he was transferred to Tennessee on April 27, 2004; that McNemar's bad conduct may have continued until the plaintiff took medical leave; that the plaintiff took medical leave on July 26, 2004, and never returned to her job; and that the plaintiff filed her EEOC Charge regarding the conduct of Sloan and McNemar, and MINACT-Yates' alleged acquiescence, on December 3, 2004.

Of course, because this 180-day time limit operates as a statute of limitations, it is subject to equitable tolling. *Hood*, 168 F.3d at 232. The plaintiff has asserted in her complaint that her mental well-being was impaired by the conduct of the defendants Sloan and McNemar, but she makes no equitable tolling argument in her response to the motion to dismiss or for summary judgment. For instance, the plaintiff makes no claim and presents no supporting evidence that she was incapacitated to the point of being unable to file a timely EEOC Charge in this case. The Title VII plaintiff bears the burden of justifying equitable tolling, *Blumberg v. HCA Management Company*, 848 F.2d 642, 644 (5th Cir. 1988), and in the instant case the plaintiff has not done so.

Failure to file a charge with the EEOC within 180 days after the discriminatory conduct in question will preclude a subsequent civil lawsuit alleging Title VII discrimination. *Pruet Production Company v. Ayles*, 784 F.2d 1275, 1279 (5th Cir. 1986). Federal courts consistently have upheld this 180-day requirement as a precondition to filing suit in district court. *Julian v. City of Houston*, 314 F.3d 721 (5th

Cir. 2002); *Pruet Production Co. v. Ayles*, at 1279; and  *Cruce v. Brazosport Independent School District*, 703 F.2d 862, 864 (5th Cir. 1983).

This 180-day period begins to run when the employee receives notice of the allegedly discriminatory conduct or employment decision.  *Vadie v. Mississippi State University*, 218 F.3d 365, 371 (5th Cir. 2000); *Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876, 878 (5th Cir. 1991).  In the instant, case the plaintiff's employment with MINACT-Yates continued for a short time after Bill Sloan was transferred on April 27, 2004, until July 26, 2004, when she took medical leave.  The plaintiff's complaint says that the sexual harassment she suffered ended when Sloan was transferred.  So, if the plaintiff is held to this allegedly last day of sexual harassment when she knew or should have known of the egregious conduct in question, she may not rely upon the date when her employment actually ceased, either in July when she took leave or in September when she was terminated.  *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002);  *Vadie*, 218 F.3d at 371; and *Pruet*, 784 F.2d at 1278-79.

Therefore, in light of the foregoing, this court must conclude that the plaintiff's Title VII claims, especially those based upon the conduct of defendant Sloan, are now precluded by the 180-day time limit provided in Title 42 U.S.C. § 2000e-5(e)(1).

Here, again we need to examine the plaintiff's complaint.  In Paragraph VII of her complaint, plaintiff stated that the sexual harassment by defendants Sloan and McNemar continued until defendant Sloan was transferred later that year.  If plaintiff meant this assertion, then plaintiff indeed has stated that all sexual harassment by both Sloan and McNemar ceased when Sloan was transferred on April 27, 2004.

11

Accordingly, plaintiff's Title VII claims against MINACT-Yates predicated on the conduct of both Sloan and McNemar, would now be precluded by the 180-day time limit.

Read liberally, however, plaintiff's complaint could be viewed as alleging that McNemar's alleged misconduct continued after Sloan was transferred.  Her complaint charges that because of the harassment, she had to seek medical treatment.  The question, then, is whether plaintiff's charge to EEOC was timely when viewed from the last possible occasion of McNemar's alleged misconduct.  Plaintiff may be contending that this misconduct was ongoing and forced her to seek medical leave.  If so, we need measure the 180-day time period from the date of her medical leave until the date she filed her EEOC charge.  She says that she took medical leave on July 26, 2004, and that she filed her EEOC charge on December 3, 2004.  As such, plaintiff's charge with the EEOC would have been timely if predicated on the alleged misconduct of defendant McNemar.

In summary, this court finds that defendant MINACT-Yates' motion for summary judgment relative to the 180-day time limit should be granted in part and denied in part.  The court grants the motion relative to any alleged misconduct plaintiff attributes to Sloan, but denies the motion relative to any misconduct attributed to McNemar.

### C.  Whether The Complaint  Asserts Actionable Sexual Harassment

Defendant MINACT-Yates points the court to *Duncan v. General Motors Corporation*, 300 F.3d 928, 934-35 (8th Cir. 2002), *cert. denied,* 538 U.S. 994, 123 S.Ct. 1789, 155 L.Ed.2d 695 (2003).   MINACT-Yates contends that the list of cases collected in that opinion which have rejected hostile work environment claims should

12

persuade the court that the conduct set out in the plaintiff's complaint does not arise to the appropriate standard for a showing of sexual harassment.  For instance, the *Duncan* Court cited *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 872, 874 (5th Cir.), *cert. denied*, 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999), where the plaintiff endured over a two-year period such comments as, "your elbows are the same color as your nipples," other comments about the plaintiff's thighs, repeated touching of plaintiff's arm, and attempts to look down the plaintiff's dress. This conduct, said the Fifth Circuit, was insufficient to support a hostile work environment claim.[12]

Since this court has determined that the alleged misconduct of Sloan is no longer before the court because of the 180-day limitations rule, this court applies the jurisprudence of this section solely to the alleged misconduct of defendant McNemar. What is that misconduct?  According to plaintiff, defendant McNemar "repeatedly and

---

[12]Other cases cited in the *Duncan* opinion which found apparently egregious behavior to be insufficient for a sexual harassment charge include *Adusumilli v. City of Chicago*, 164 F.3d 353, 357, 361-62 (7th Cir.1998) (holding conduct insufficient to support hostile environment claim when employee teased plaintiff, made sexual jokes aimed at her, told her not to wave at police officers "because people would think she was a prostitute," commented about low-necked tops, leered at her breasts, and touched her arm, fingers, or buttocks on four occasions), *cert. denied*, 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999);  *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823-24, 826 (6th Cir.) (reversing jury verdict and holding behavior merely offensive and insufficient to support hostile environment claim when employee reached across plaintiff, stating "[n]othing I like more in the morning than sticky buns" while staring at her suggestively; suggested to plaintiff that a parcel of land be named "Hootersville," "Titsville," or "Twin Peaks"; and asked "weren't you there Saturday night dancing on the tables?" while discussing property near a biker bar), cert. denied, 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997); and *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993) (holding no sexual harassment when plaintiff's supervisor asked plaintiff for dates, asked about her personal life, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs at her work station, and attempted to kiss her twice at work and once in a bar).

routinely asked plaintiff and other workers to come into his office and look at pornographic pictures on his computer." She says that defendant McNemar would ask plaintiff to make comments about the pictures. Defendant Sloan, she contends, harassed plaintiff "in a more aggressive and relentless manner ... ." So, with regard to McNemar's alleged misconduct, plaintiff alleges that he created a hostile work environment by asking her to look at pornographic pictures. She does not allege that she was forced to look at any such images, nor even what they were. This court is persuaded that McNemar's alleged misconduct alone cannot support a hostile work environment claim.

### D. Infliction Of Emotional Distress Claim Time-Barred

The plaintiff's complaint asserts in Count Two a claim of intentional infliction of emotional distress under Mississippi law. In addressing this claim, this court applies Mississippi's substantive law as required by *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (requiring that a federal court apply state law to matters not governed by federal law).

Claims for intentional infliction of emotional distress are governed by Mississippi's one-year statute of limitations, Mississippi Code Ann. § 15-1-35 (Rev. 2002);[13] *Randolph v. Lambert*, 926 So.2d 941, 945 (Miss. App. 2006).[14] In the instant

---

[13]Mississippi Code Ann. § 15-1-35 provides that, "[a]ll actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after."

[14]Negligent infliction of emotional distress has a three-year statute of limitations under Mississippi law, MCA § 15-1-49, providing that, "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." *See Randolph v. Lambert*, 926 So.2d at 946. The plaintiff's

case, says MINACT-Yates, the plaintiff did not file her complaint in this court until September 9, 2005, while the infliction of emotional distress complained by the plaintiff would have ended after she left her employment on July 26, 2004.  Thus, says MINACT-Yates, the plaintiff would have had to file this claim by July 26, 2005, in order for it to be timely.

This court agrees and in doing so allows a liberal application of the statute of limitations to this claim.  Ordinarily, the court computes the limitation period from the date of the misconduct until the filing of the lawsuit.  *Citifinancial Mortgage Co., Inc. v. Washington*, 967 So.2d 16, 19 (Miss. 2007).  If the claim is a continuing tort, the statute of limitations does not begin to run until the date of the last injury. *Smith v. Sneed*, 638 So.2d 1252, 1255 (Miss. 1994).  A continuing tort is a tort that is "inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Stevens v. Lake*, 615 So.2d 1177, 1183 (Miss. 1993).

In the instant case, the date of the plaintiff's last injury was July 26, 2004, the date she left her employment on medical leave of absence.  As earlier stated, the misconduct attributable to Sloan ended in April, 2004, but if we assume that plaintiff's allegation embraces alleged misconduct by McNemar which continued until July 26, 2004, we would have to apply our yardstick from that date.  Inasmuch as plaintiff filed this lawsuit on September 9, 2005, her claim of infliction of emotional distress is time-barred by Miss. Code Ann. § 15-1-35.

_____

complaint raises no claim of negligent infliction.

This statute of limitations for this claim is not affected by the pendency of the plaintiff's administrative charge with the EEOC.   *Dupree v. Hutchins Brothers*, 521 F.2d 236, 238 (5th Cir. 1975), citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).   As the Supreme Court explained in *Johnson*, Congress did not intend Title VII proceedings to delay independent avenues of redress.   *Johnson*, 421 U.S. at 461, 95 S.Ct. at 1720.

### E.  Whether The Complaint  Asserts Sufficiently Outrageous Conduct Relative To McNemar

MINACT-Yates submits that even if the plaintiff's intentional infliction of emotional distress claim is not time-barred, plaintiff's claim founded upon sexual harassment does not meet the extreme and outrageous conduct required  to support a claim of intentional infliction of emotional distress.   *Runty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994); *Wilson v. Monarch Paper Company*, 939 F.2d 1138, 1145 (5th Cir. 1991).  The State of Mississippi, says MINACT-Yates, imposes a very high standard for these claims, requiring proof that a defendant's conduct was wanton and wilful to a degree that evokes outrage or revulsion, citing *Hatley v. Hilton Hotels Corporation*, 308 F.3d 473, 476 (5th Cir. 2002). The plaintiff, argues MINACT-Yates, must prove "acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001).

The conduct alleged by the plaintiff in her complaint is summarized by MINACT-Yates as follows: (1), McNemar repeatedly and routinely asked persons,

16

including the plaintiff and Bill Sloan, to come to his office to view pornographic pictures; (2), McNemar and Sloan asked the plaintiff to look at the pictures and offer comments; (3), Sloan asked the plaintiff about her sexual preferences and activities; (4), Sloan regularly commented on how beautiful he believed African-American women to be and how he intended to have sex with an African-American female; (5), Sloan asked about the sexual practices of African-American men and distinguished his own sexual practices; (6) Sloan began to request sex from the plaintiff by calling her at home; and that (7), the defendant MINACT-Yates ignored the plaintiff's complaints about this conduct.  MINACT-Yates characterizes this conduct as nothing more than an employment dispute, and, if more than that, still not so outrageous as to support plaintiff's intentional infliction of emotional distress claim.

The court need not address in full the above argument of MINACT-Yates since defendant Sloan has been dismissed from this action.  Accordingly, this court looks only at the alleged misconduct of defendant McNemar.  This court is persuaded that under Mississippi law McNemar's misconduct, as alleged, would not support plaintiff's claim of intentional infliction of emotional distress.

### F.  Whether Count Three Of The Complaint States A Claim

MINACT-Yates submits that the plaintiff's Third Count in her complaint raises no actionable claim and merely asserts that by their conduct the defendants acted in willful, malicious and reckless disregard for the plaintiff's rights.  This bare assertion, says MINACT-Yates, is the plaintiff's attempt to bolster a punitive damages claim.

17

This court agrees with MINACT-Yates.  Plaintiff here is simply seeking to urge a punitive damages claim.  In view of the court's earlier finding in this opinion, plaintiff's punitive damages claim is without basis.

## CONCLUSION

Therefore, having previously entered dismissal on behalf of the defendants Bill Sloan and Robert McNemar, and now having dismissed the plaintiff's Title VII claims and intentional infliction of emotional distress claims against MINACT-Yates, LLC, this court hereby dismisses the plaintiff's complaint with prejudice.   The court will enter a Final Judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED, this the 3rd day o fSeptember, 2008.**

**s/ HENRY T. WINGATE**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:05-550 HTW-LRA
Memorandum Opinion and Order